SEGELKE & KOHLHAUS MANUFACTURING COMPANY,
Appellant, v. JOHNSON et al., Respondents.

(199 N. W. 474.)

(File No. 5044.    Opinion filed June 26, 1924.)

Sales—Contracts—Evidence—Findings—Evidence Held Not to Sustain Finding that Contract Included Certain Items.

In an action to recover balance due on a contract to furnish materials for construction of a church, evidence held not to sustain a finding that seller included in his contract art glass for the building, and that buyer was entitled to a deduction from contract price because of seller's failure to furnish such glass.

Appeal from Circuit Court, Brookings County; Hon. W. N. Skinner, Judge.

Action by the Segelke & Kohlhaus Manufacturing Company against Samuel A. Johnson and the First Baptist Church of Brookings, S. D. Judgment for defendants, and plaintiff appeals. Reversed.

*Cheever & Cheever,* of Brookings, and *McConnell & Schweizer,* of La Crosse, Wis., for Appellant.

*Hall & Purdy,* of Brookings, for Respondents.

POLLEY, J. This action is brought to recover a balance claimed by plaintiff to be due from defendant on a contract to furnish certain materials to be used in the construction of the First Baptist Church at Brookings. The word "defendant" hereinafter refers to defendant Johnson only. Defendant claims that the contract included certain articles that were not furnished by plaintiff, and that he is entitled to a deduction from the contract price of the value of these articles, while plaintiff claims that such articles were not intended to be included in the contract, and that defendant is not entitled to such deduction. The case was tried to the court without a jury. Findings and judgment were for defendant, and plaintiff appeals.

The facts, as we gather them from the record, are as follows: Plaintiff is a corporation engaged in the business of manufacture and sale of certain classes of building material. Defendant Johnson had the contract to build said church, according to plans and specifications that had been prepared by the architect.

These plans and specifications were submitted to plaintiff, and plaintiff made an estimate of the amount for which it would furnish certain portions of the material. This estimate was submitted to defendant by one Haller, a traveling salesman for plaintiff. It was numbered 9384, and was, in fact, two separate estimates, or at least it was gotten up in two separate forms, each of which was numbered 9384; but one of them was much longer and went into detail far more than the other. By these estimates plaintiff proposed to furnish certain material for the lump sum of $4,185. The material in dispute consists of three items, viz.: Art glass, $1,254; syenite glass, $35; and ventilators, $8.13— making a total of $1,297.13. One of these estimates appears to contain these items and defendant claims that he accepted the proposal with the understanding that these items were included. The acceptance, so far as material, is as follows:

"Please enter order for est. No. 9384  *  *  *  for $4,185.00."

This acceptance was on a blank form furnished by plaintiff. It was signed on the 3d day of May, 1919, and was made expressly subject to approval and acceptance by plaintiff at La Crosse, Wis. It was then taken by Haller to plaintiff's place of business at La Crosse. On the 9th day of May plaintiff forwarded to defendant at Brookings a carefully prepared detailed statement of what it claims to be all of the items of material that were to be furnished under the order, but it did not contain any of the articles in dispute. This statement was headed as follows:

"Notice—This is a copy of your order as we have entered it on our books. Please examine carefully, and if it is not entered correctly notify us immediately, so that changes (if any) can be made before the work is cut out or started at the mill. This order cannot be canceled or changed after work has been commenced except at the expense of the purchaser. Should it be necessary to write regarding this order, refer to it by number."

This statement was retained by defendant, and, so far as the record shows, no objection to its contents was ever made.

During the conversations and negotiations that took place between Haller and the defendant, but before the order was signed by defendant, the articles in dispute were talked over and the notation "art glass figured at $1,254.00" was made by

Haller on one of the estimates. This estimate was retained by defendant, and it is now claimed by him that there was an understanding between himself and Haller that this and the two other items above mentioned were to be deducted from the contract price in case these items were not furnished. It was admitted by Haller that the disputed articles were talked over by himself and defendant, and that he made said notation on the estimate, but that it was done to furnish defendant with these figures to be used as a basis for further negotiations for the additional business; that at the time he took the order the designs for the art glass had not yet been furnished to the plaintiff by the architect; and defendant himself, in regard to this matter, testified as follows:

"And the art glass—I told him I did not know whether I would be able to give him the art glass, because the architect wanted to supervise that himself."

We fail to see why there should be any dispute over what was to be included in the contract for $4,185. When plaintiff furnished defendant with the detailed statement of the items to be included in the order, which was received and retained by defendant without objection, this superseded all previous negotiations, and became the contract. But this is not all. On the 26th day of May, 23 days after defendant signed the order, Mr. Haller wrote defendant relative to the transaction, and in the course of his letter said:

"Regarding the art glass on this job, we would like very much to get the order for this in connection with the other millwork, so kindly send us designs for same so that we may submit a quotation."

Now this letter, if honestly written, shows conclusively that Haller did not intend or understand that the art glass had been included in the order. It was notice of that fact to defendant, and, if defendant had honestly believed at that time that the art glass was included in his order, the only natural or reasonable thing for him to have done was to have written back and said that the art glass was included in the $4,185 order. This was before any of the material had been shipped by plaintiff, and if there was an uncertainty or misunderstanding as to the meaning of the contract it could have been adjusted before expense had

been incurred; but, instead of writing back and saying that the art glass was included in the order, he wrote, on the 28th day of May, saying:

"The art glass is taken out of my contract and is in the hands of the architect."

This could have had but one meaning, and that is that the matter of the art glass had been taken over by the architect, and that he (defendant) could not place the order for it with any one. It was so understood by Haller, and he appears to have given the matter no further consideration. Defendant in no way intimated that the art glass was included in the order until the 17th day of April, 1920, nearly a year after the placing of the order. This was after all the other material had been shipped and used by defendant, and plaintiff was endeavoring to secure a final settlement, when, for the first time, defendant claimed a credit of $1,297.13 on account of these disputed articles. Respondent contends that the letter written by Haller was a self-serving declaration, "written for the sole and only purpose of camouflage, and was a somewhat clumsy effort on his part to convey the impression that they had never figured on the art glass, and therefore it was included in the bid." This letter cannot be explained away in any such manner. Standing alone, it may be only a self-serving declaration, but, by having been made at the time and under the circumstances that it was made, it was sufficient to give notice to the defendant that there might be an ambiguity in the contract, and it required him to speak, and speak at once. Had he done so, whatever misunderstanding (if any) that existed could have been cleared up before plaintiff had performed the contract as it understood the same, and this lawsuit would never have been. The court evidently adopted respondent's view, and wholly ignored this correspondence.

By its findings of fact Nos. 4 and 5, the court found that the art glass was included in the contract at $1,254, and the syenite glass at $35, amounting to $1,289, which should be deducted from the contract price of $4,185. In our view these findings are not only unsupported by evidence, but are contrary to the overwhelming weight of the evidence.

The judgment and order appealed from are reversed.

Note.—Reported in 199 N. W. 474. See. Headnote, American Key-Numbered Digest, Sales, Key-No. 87(3), 35 Cyc. 122.